Case number 23-121, Knox v. CRC Management Co., LLC Good morning. Stephen Bergstein for the Plaintiff Appellant. We have five claims here, discriminatory discharge, retaliation, disability discrimination, hostile work environment, and wage and hour. Let me start with the discharge claim, both of which rely on the same pretext analysis. Defendants claim they were able to fire a plaintiff because she took money from the cash register, but the record shows the plaintiff had permission to do so in the circumstances in which she did it. And since the supervisor who played a significant role in the plaintiff's termination had subjected her to racially disparaging epithets, the jury may find that defendant's reason for her termination was a pretext for retaliation. I want to remind the court, the district court said plaintiff did make out a prima facie case on disparate treatment, but said Were the supervisors who were involved in the termination decision alleged to have made comments or have been involved in the reporting of the cash register incident? The supervisor who investigated plaintiff's termination and signed the termination form was Ferris, and Ferris is one of two supervisors who made racially disparaging comments toward the plaintiff. What was Ferris' involvement in the termination decision? He did an investigation. It came to his attention that this happened, and he investigated, and then he made a determination, she broke the rules, and then he signed the separation form that led to plaintiff's discharge. But that doesn't indicate that it was his decision. I thought it was Pegrero and Baptiste. I think Pegrero was the one who first brought up the issue. It came to Ferris' attention. Somebody asked Ferris, I think it's in Ferris' unsworn statement, to investigate, and he did. And so he played a significant role in the termination because he did the investigation, and then he signs the form. So if the supervisor who harbors racial views plays a significant role in the sequence of events leading to the plaintiff's discharge, that supports a finding of discriminatory intent under Bickerstaff. And the district court recognized this insofar as it said plaintiff made out a prima facie case, but it said the case fails on pretext because plaintiff didn't have authority to take money out of the cash register. But she testified that Ferris, of all people, gave her authority to do this at her deposition. And she also said so in her affirmation. So on this record, the jury can find that the reason given for her termination was false and that the real reason was either retaliation, because she did complain about hostile work environment, and or straight disparate treatment. And, you know, we're getting into issues of intent here. You know, why was she fired? If the jury says that she was given the false reason, the jury can then find, you know, the jury's then asked, well, what was the reason for that? And under this court's cases, the issue of intent is usually for the jury when you have some evidence of racial animus. The hostile work environment claim also should go to trial. Ashmead, one of her supervisors, daily subjected plaintiff to racial comments that altered her work environment for the worse. That's enough to show pervasive harassment under Title VII. Ferris, quote, routinely subjected plaintiff to racial comments. That's in her affidavit. That's also enough to show pervasive. And under the city law, which is a more lenient standard, plaintiff can show she was treated less well because of these comments that were neither trivial nor petty. So that's another point. So under the differential treatment under the city law, she doesn't even have to show an adverse action, right? She just has to show that she was treated less well. Less well. That's correct. Can you move on to the discrimination claim? The disability? The disability, I'm sorry. Sure. Sure. Disability. All right. So plaintiff hurts her thumb, and Butler, one of the supervisors, gives her an accommodation. Okay. Butler was one of the good guys here. Butler leaves in February. Ashmead remains her supervisor. Ashmead then denies the reasonable accommodation. She made comments to plaintiff such as, you shouldn't have this job if you need an accommodation. Just do your job. Your finger shouldn't be hurting that bad. You're not done with your work. And then Ashmead took plaintiff off the schedule. So what district court said was that the accommodation claims – Not working. Not working. It's not clarified beyond that, but I think when you're taken off the schedule, the inference is you're not working for a period of time. You're not given the hours that you need to earn a salary. So what the district court said was that if Butler gave plaintiff the accommodation, then plaintiff's testimony that Ashmead did not honor that accommodation is fatal to the claim. But actually, this line of testimony can be reconciled because Butler left in February 2019, and Ashmead, the reasonable accommodation denials continued into March. So it's not so much that Butler gave her the accommodation, but it's that Ashmead denied her. What would you respond to the fact that the district court indicated that Knox's statements were inconsistent? That's what I was addressing. Yes, Butler gave plaintiff the accommodation. That's good. Ashmead – but Butler left in February. Ashmead remains plaintiff's supervisor until the end, and the evidence shows Ashmead's reasonable – But Ashmead was transferred at some point to a different location. Right. She didn't stay to the end. But she was there long enough after Butler left to deny plaintiff the reasonable accommodation. So that's how we reconcile it. Ashmead denied plaintiff a reasonable accommodation even though Butler granted her one. So if you don't – I thought it had to do with the heaviness. I thought that – what I thought you were going to tell me was that at one point, your client said that she was allowed to perform fewer heavy washes, and then at another point she said that she was still required to lift and wash over 25 pounds. And I don't read those as having to be inconsistent. Just because she had to lift some fewer amount over the 25 pounds, she still might have had to do something over the 25 pounds. I'm not sure where the Butler-Ashmead comes in in all of this. That was the inconsistency I was hoping you would address. Ashmead wanted plaintiff to lift more than 25 pounds. That's the reasonable accommodation violation. Let me talk briefly about wage and hour. Defendant presented some pay records showing that plaintiff was paid for her work, but the pay records stopped in February 2019. We don't have pay records to the end. District Court said plaintiff's testimony that she worked an additional eight hours a week without pay was vague and created a metaphysical doubt insufficient for trial. But under Kubell v. Black and Decker, the plaintiff's testimony that I worked a certain number of hours and I wasn't paid is enough to make out a claim for wage and hour. It's a lenient burden of proof because the employer has a duty to maintain the records, not the plaintiff. So as long as the employee presents sufficient evidence under Kubell to show the amount and extent of the uncompensated work, that's enough to make out a wage and hour claim. That's what we have here. So for these reasons, this case should be remanded for trial on all of these issues. Thank you. Yes, may it please the Court. Jeremy Shalinski on behalf of Defendant Appellees. I'll just address a few points made by my friend here. First and foremost, Vincent Butler did, in fact, put in an accommodation for the disability. And plaintiff herself testified that when Ken Ferris came, Vincent Butler as a district lead, and that was on or about March 11, 2019. She, in fact, spoke to Ken Ferris and said Vincent had put into place that she wasn't lifting more than 25 pounds. And that continued on. Ashby didn't somehow- Did she say that she didn't or she said she did it fewer? I read the record as saying that she had to do it fewer, which still means maybe she did it once or twice. And we have to assume the facts in her favor. Oh, lifted more than 25 pounds. Yes, she did, in fact, testify that she did fewer. She didn't say exactly 25 pounds or less. So why isn't that enough, at least on that small claim, to go to a jury? Because if you take her testimony in the whole, she said that the accommodation she requested was in place from Butler. Ashby didn't knock that out or somehow make her do more. And Ashby, to be fair, wasn't her supervisor, but it was in place with Butler. And then when she spoke with Ferris, and we do have Ferris's unsworn, I guess, affidavit he prepared at the time of termination. But aren't we saying that we know that- I mean, didn't Knox show that Ashby didn't accommodate her, right, that she had it, but then she didn't? Her testimony is that Ashby was saying things like, oh, you can do this. Not that she made her do more. But if you add that together with the idea that she said she was only permitted to do fewer instances of living over 25 pounds, why isn't that enough at this stage when we have to review everything according to her favor? No, understood. And isn't there an interactive process that that was supposed to engage in that you all didn't? Well, that was with Vincent Butler, the former district lead. Okay, and then when he left, it just went away? No, the testimony from our standpoint is that it continued on. We never broke that, oh, now you have to do 25 pounds or more because Vincent Butler is gone. It continued on with Ken Ferris, which in his statement attached to the Neville Baptiste declaration is that when he came in, she said, yes, it was in place. Her and her doctor had requested, in which they dealt with Vincent Butler, the former district lead. Would you concede that there is no adverse action that is required under the city HR law for differential treatment? For differential treatment for the hostile environment? Are you talking for the discrimination? Discrimination. Disability?  Well, no, there has to be something that occurs. It can't just be exist and avoid. There has to be some form of action. Now, it doesn't have to be to the level of the state and certainly not to the ADA, but there has to be some form of action that exists there. Otherwise, it doesn't follow. The treatment, the hostile comments, that's not enough? The hostile comments for purposes of the hostile. For the city law. For the city law, the hostile environment is very liberal. And we do concede that. And I believe we conceded it in our papers. Judge Ramos's order was sort of, he got there. He got to dismiss it. But the stronger point is for the state human rights law. And, yeah, the city human rights law argument was somewhat wanting, but not reversible. Can I address also the. . . Well, could you address the cash register permission issue? Yes. I mean. . . That's what I was going to. . . So, Knox claims that she had permission. Why is that created an issue for trial? Because the only. . . And this is something. . . They actually. . . She cites a case in her brief. And we did, too, a different case. But the only support for that is her own testimony. There's no testimony from us saying that you had permission. In fact, it's quite the opposite. That you had permission to go into the register for any purpose unless you had prior approval. But I understand she did say during her deposition. . . Well, at first she said you could. . . Your cabs to work or to and from different locations would be paid for if it was an inconvenience. And then that changed a little bit during the deposition to say that. . . Well, they'd been doing it for a long time. I could always get my cab fare paid for when I came to work. And then in the declaration. . . And I believe in the complaint. . . It was. . . I had approval to do so from Ken Ferris. Whereas, Ken Ferris' contemporaneous statement was she didn't have approval to do so. That's what trials are for. When she says one thing. . . Understood, but she's. . . There's no other evidence that anyone ever had approval. And we have from Neville Baptiste saying there's no approval to take money from the register for cabs or any other purpose. So your argument is that a self-serving declaration is not enough to create an issue for trial? Is that. . . Well, this court has actually held that. . . It doesn't exactly say self-serving, but declarations like that can create an issue for trial. If I may, I have the case I wanted to cite. In any event, the case was that the self-serving declaration by itself can sometimes not. . . When there's other evidence or evidence here that she didn't have approval to do so. I understand that it's a tricky argument, but there was no approval to do so. It's a bit ridiculous because what we have is someone took money from the register. She was called out by Ashley Peguero. It wasn't Ken Ferris that discovered it. Ashley Peguero called her at home and said, hey, you took money from the register. Yes, will you repay it? No, and hung up. Now, there's some debate over whether. . . So what I think you're saying is that even if it were a. . . It would have been a triable fact as to whether or not she was permitted or there was a policy. The fact that Peguero said pay it back and she didn't is a violation of the. . . Handbook and law policies, yes. But your. . . Okay. And I have three minutes. I think I've addressed what my colleague said, so if he wants to have rebuttal, I will reserve. Thank you. Thank you, Counsel. We'll hear rebuttal. Thank you. A couple of points. First, on the reasonable accommodation, that Joint Appendix 98, Deposition Page 83. Question, after you were told you don't have to lift 25 pounds, were you required to do so? Answer, yes. She told me I still had to do my job. I'm not done. That's plaintiff's testimony about Ashley. The City Human Rights Law, the District Court did say it's a close call. Once we get into that kind of analysis, whether it's a close call, whether they're petty slights, under the city law. . . I'm sorry, can I go back to the failure to accommodate? I thought your friend just said that Ashmead was not her supervisor at that time and that she had been granted an accommodation not to have to lift anything over 25 pounds. Well, the evidence was Ashmead was giving plaintiff orders and telling plaintiff how to do her work. If Ashmead says you're not. . . When was Ashmead transferred? I guess the timing here matters. Ashmead left. . . Maybe in March. Maybe in March. But during that month, that's when. . . That was during the time that you're saying she was. . . Well, but Ashmead was hostile to the reasonable accommodation afterwards. She left. But that sequence, some of that took place in March. But Ashmead, I don't think, made it into April. But in March, plaintiff was being asked to do certain lifting that was contrary to medical advice and her accommodation. The city law, close call. When we have close calls in a hostile work environment, especially under the city law, there's cases, Bennett, where that issue really goes to the jury. On the issue of self-serving testimony, this court has said many times the plaintiff's affidavit is enough to create an issue of fact. Defendants didn't submit sworn testimony from any of the active supervisors in the case. The statements that they're relying on are actually unsworn. So for now, if the jury believes plaintiff, the jury can find that she was subjected to these comments and that she was denied these accommodations. And all the elements of her affirmative burden of proof are made out by the plaintiff's testimony. Thank you. Thank you, counsel. Thank you both. We'll take the case under review.